BENJAMIN P. MATES *vs.* THE PENN MUTUAL LIFE
INSURANCE COMPANY.

Suffolk.     October 8, 1943. — June 1, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, WILKINS, & SPALDING, JJ.

*Insurance*, Life: reformation of policy, cash surrender value, incontestability clause. *Mistake. Equity Jurisdiction*, Reformation, Mistake.

A mistake made, by the party drafting an instrument, to the knowledge of the other party thereto is equivalent to a mutual mistake.

A typewritten figure, inserted by the insurer's typist in a table of cash surrender values in a policy of endowment life insurance, which, by

comparison with other figures in that table, obviously was too large and was known by the insured to be so, properly was found to be a mutual mistake of the insurer and the insured which gave the insurer a right to a reformation of the policy in equity and, under G. L. (Ter. Ed.) c. 231, § 31, constituted a defence to an action by the insured to recover the difference between a cash surrender value based on such erroneous figure and a value based on the correct figure.

Defending an action by the insured, begun more than two years after the issuance of a policy of endowment life insurance and brought to recover a cash surrender value based on an erroneous figure inserted in the policy through a mutual mistake of the insurer and the insured, was not contesting the policy within the meaning of, and was not precluded by, a provision of the policy respecting its incontestability after it had been in force for two years from its issuance.

CONTRACT. Writ in the Superior Court dated March 14, 1941.

The case was heard by *Fosdick*, J., who found for the defendant.

In this court the case was argued at the bar in October, 1943, before *Field*, C.J., *Donahue, Lummus, & Ronan*, JJ., and after the retirement of *Donahue & Cox*, JJ., was submitted on briefs to *Qua, Wilkins, & Spalding*, JJ.

*E. M. Dangel*, (*L. E. Sherry* with him,) for the plaintiff.

*R. C. Evarts*, for the defendant.

LUMMUS, J. The plaintiff, on March 14, 1941, brought this action of contract to recover an unpaid balance of the cash surrender value of a fifteen year endowment life insurance policy issued on February 24, 1939, upon the payment of a single premium of $10,000. The amount of the policy was $13,956. The defence is an equitable one (G. L. [Ter. Ed.] c. 231, § 31), that the statement in the policy of the amount of cash surrender value applicable to the case was inserted by a mistake which entitled the defendant to be absolutely and unconditionally relieved against the plaintiff's claim.

When surrendered, the policy had run two full years. The policy provided that "if premiums have been paid for two full years or more, a cash value equal to the full reserve on this policy, less a surrender charge not greater than 1 per cent of the sum insured, shall be available. . . . The basis of such reserve shall be the American Experience Table of

Mortality with interest at 3 per cent per annum according to the net level premium method." An actuary was allowed to testify over the plaintiff's objection and exception, that the full reserve and the cash surrender value of the policy, computed on such basis, at the end of the second year of the life of the policy, would be $690.78 for every $1,000 of insurance.

The policy contained a typewritten table which gave the cash surrender value for every $1,000 of insurance at the end of different years of the life of the policy. The cash surrender value naturally increased as the policy became older. At the end of the first year that value was stated as $658.28, and at the end of the third year $718.92, and thence increased progressively. But the cash surrender value at the end of the second year was given as $890.78. It was not until the end of the eleventh year that so high a cash surrender value again appeared in the table.

In other words, the value at the end of the second year, stated in the table, is wholly out of accord with all the other values given in the table. A mistake is evident on the face of the policy. If the plaintiff can recover the value stated in the table, he will get the full premium back with interest and more than a $1,000 clear profit, besides being insured against death for two years and sharing in possible dividends. Obviously an insurance company could not make a practice of entering into such contracts, and survive.

The judge found that the correct cash surrender value at the end of two years was $690.78 for every $1,000 of insurance, just $200 less than the value stated in the table. That amount, $690.78, would have made the table consistent in its progressive increases in value. The judge inferred that the error was due to the pressing of the wrong key of a typewriter. He found, moreover, that the plaintiff, before the policy was issued, examined a table in which the values were correctly stated, and knew that the true value at the end of the second year was $690.78, and not $890.78. Furthermore, there was evidence that a few days after the policy was issued the plaintiff discovered the error, and spoke of it to the defendant's agent, who advised him to return the policy for correction. The plaintiff agreed to do so, but did not,

and the defendant's agent forgot about the error. There is nothing in the record to show that the judge did not credit that evidence.

Upon the surrender of the policy, the plaintiff was paid all that was due him if $690.78 was the correct figure. He sues for the difference, on the theory that $890.78 is the figure by which the parties are bound. The judge found for the defendant, and the case comes here on the plaintiff's exceptions.

The judge found a mutual mistake in drafting the policy to express an agreement as to which there was no misunderstanding. *Dzuris* v. *Pierce*, 216 Mass. 132, 135. On familiar principles, the defendant had an equitable right to have the policy reformed, and that equitable right constituted an unconditional and complete equitable defence to the plaintiff's claim. A mistake made by one party to the knowledge of the other is equivalent to a mutual mistake. Am. Law Inst. Restatement: Contracts, § 505. Williston, Contracts (Rev. ed. 1937) § 1548. A mutual mistake like this in a policy may be corrected at the suit of the insurer. *Columbian National Life Ins. Co.* v. *Black*, 35 Fed. (2d) 571, 71 Am. L. R. 128. *Kaufman* v. *New York Life Ins. Co.* 315 Penn. St. 34. *Neary* v. *General American Life Ins. Co.* 140 Neb. 756. *Home Life Ins. Co.* v. *McCarns*, 25 Del. Ch.——[1] (16 Atl. [2d] 587). *Prudential Ins. Co.* v. *Deane*, —— Del. Ch.——[1] (27 Atl. [2d] 365). *Metropolitan Life Ins. Co.* v. *Oseas*, 261 App. Div. (N. Y.) 768; affirmed, 289 N. Y. 731.

The exceptions that are argued were taken to the admission of evidence to show mistake. The only ground upon which they are argued is that mistake is immaterial in view of a provision in the policy as to incontestability. That provision reads as follows: "Except for default in premium payment, this policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from the date of its issuance." Such a provision was required by G. L. (Ter. Ed.) c. 175, § 132. The plaintiff contends that that provision makes it now too late for the defendant to show the mistake. In our opinion the correc-

---

[1] Official pagination not available on February 7, 1945. — REPORTER.

tion of the policy to express the true agreement is not contesting the policy within the meaning of that provision. See *Columbian National Life Ins. Co.* v. *Black,* 35 Fed. (2d) 571, 71 Am. L. R. 128; *Equitable Life Assurance Society* v. *Rothstein,* 122 N. J. Eq. 606, affirmed 123 N. J. Eq. 591; *Neary* v. *General American Life Ins. Co.* 140 Neb. 756. See also *Reagan* v. *Union Mutual Life Ins. Co.* 189 Mass. 555.

*Exceptions overruled.*